# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : **TO BE FILED UNDER SEAL** |
| v. | : Hon. James B. Clark III |
| YANA SHTINDLER | : Mag. No. 19-3048 |
| | : **CRIMINAL COMPLAINT** |

I, Michael Hooper, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached page and made a part hereof.

Michael S. Hooper, Special Agent
Federal Bureau of Investigation

Special Agent Michael S. Hooper attested to this Affidavit
By Telephone Pursuant to F.R.C.P. 4.1(b)(2)(A).

January 24, 2019, at
District of New Jersey

HONORABLE JAMES B. CLARK III
UNITED STATES MAGISTRATE JUDGE    Signature of Judicial Officer

1

## ATTACHMENT A

### COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

From at least as early as in or around January 2013 through on or about ~~September 11, 2017, in Hudson County, in the District of New Jersey, and~~ elsewhere, defendant

### YANA SHTINDLER

knowingly and intentionally conspired and agreed with others to execute a scheme and artifice to defraud the Medicare program, a health care benefit program as defined under Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Section 1349.

2

## ATTACHMENT B

I, Michael Hooper, am a Special Agent with the Federal Bureau of Investigation. I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known to the government concerning this matter. Where statements of others are set forth herein, these statements are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### The Defendant and Pharmacy

1. At all times relevant to this Complaint:

   a. Defendant YANA SHTINDLER ("SHTINDLER") resided in New York and was the Administrator and former counsel for Pharmacy-1, located in Union City, New Jersey.

   b. Ruben Sevuymants ("Sevumyants"), a coconspirator not charged in this Criminal Complaint, resided in Marlboro, New Jersey and was the operations manager of Pharmacy-1.

   c. "Pharmacy-1" was a specialty pharmacy and health care supplier, located in Union City, New Jersey, which, since in or about 2010, among other things, prepared and supplied medications that were prescribed to treat a variety of conditions, including Hepatitis C, Crohn's disease, and rheumatoid arthritis.

   d. The Medicare Program ("Medicare") is a federal program that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries." Medicare has an optional Part D program, which, for a monthly premium, provides coverage for the cost of prescription drugs for people on Medicare. This coverage is provided by insurance companies and other private companies approved by Medicare.

e.  Medicaid is a program jointly funded by the federal government and individual states to assist poor persons and other qualified persons in paying for the costs of health care. Medicaid works by reimbursing hospitals, physicians and other health care suppliers, such as pharmacies, for providing health care services and items to qualified individuals at fixed rates in a manner similar to Medicare.

### The Scheme to Defraud

2.  In order to submit a claim to Medicare or Medicaid for the dispensation of a prescription drug, Pharmacy-1 had to "adjudicate," or submit its claim to the health care benefit program. Medicare and Medicaid rules generally permitted specialty pharmacies, such as Pharmacy-1, to submit claims for prescription drugs before the prescription had been dispensed, however, the applicable rules required that Pharmacy-1 supply the patient with the product within 14 days of the claim using either a commercial delivery service, in-house delivery service by the pharmacy, or by patient pick up. For patients beyond a certain distance from Pharmacy-1, Pharmacy-1 exclusively used a private commercial shipping company (the "Shipping Company") to deliver all of its mail-order prescription drugs.

3.  Multiple individuals associated with Pharmacy-1 have informed law enforcement agents with the Federal Bureau of Investigation and the United States Department of Health and Human Services – Office of the Inspector General that Pharmacy-1 regularly billed Medicare, Medicaid, and other payors for dispensing medications that were never actually dispensed to patients.

4.  In or around April 2015, a health insurance provider completed an audit of Pharmacy-1 in which it concluded that Pharmacy-1's billing records revealed a pattern and practice of billing for prescription medications that were not actually dispensed by Pharmacy-1 to the patients. The health insurance provider shared the results of the audit with law enforcement, and around that same time, notified defendant SHTINDLER at Pharmacy-1 of the audit's results.

5.  In response, defendant SHTINDLER stated to employees of the health insurance provider that Pharmacy-1 would implement a corrective action plan and reverse any charges.

6. Later that same year, in or around the Fall of 2015, a compliance officer employed at Pharmacy-1 sent an email to defendant SHTINDLER, coconspirator Ruben Sevumyants, and a pharmacist entitled "Dispensed but not verified." The compliance officer attached a quarterly report containing the dispensed, but not verified medications. The compliance officer again warned, "If the claim is paid and not shipped within a reasonable timeframe, can be considered fraud." In response, the pharmacist asked, "How does the system keep track of what was dispensed (i.e. the medication left the pharmacy)?" SHTINDLER then replied that she and Ruben Sevumyants would "take care of" this issue themselves.

7. Despite the representations of defendant SHTINDLER and others that corrective action was being taken, since in or around the Fall of 2015, several health insurance providers have informed law enforcement of the results of additional audits, which revealed that Pharmacy-1 was continuing to bill for prescription medications that it was not actually dispensing to patients.

8. In or around January 2017, Medicaid conducted an audit of Pharmacy-1 in which Medicaid requested that Pharmacy-1 produce documentation demonstrating that Pharmacy-1 had shipped medications to Medicaid's beneficiaries. In or around February 2017, in an audio recording that captured a conversation involving defendant SHTINDLER, coconspirator Sevumyants, and at least one other individual, defendant SHTINDLER directed that Pharmacy-1's data should be falsified to satisfy the Medicaid auditors. In particular, defendant SHTINDLER stated, "change the dates" and "just make answers"—referring to changes to be made in Pharmacy-1's computer system to reflect that Pharmacy-1 had properly contacted Medicaid beneficiaries before billing and/or sending medication to the Medicaid beneficiaries, when in fact, Pharmacy-1 had not done so. Defendant SHTINDLER explained that she did not want "them," referring to the auditors, "to say we did something wrong."

9. On at least one occasion, a Pharmacy-1 employee confronted defendant SHTINDLER with evidence of fraudulent billing practices. After being confronted with this information, defendant SHTINDLER contacted a third party vendor to restrict that employee's access to Pharmacy-1's billing information.

10. On or about August 9, 2017, law enforcement officers executed a search warrant at Pharmacy-1, during which law enforcement officers seized,

5

among other things, certain of Pharmacy-1's computers. During the forensic examination of Pharmacy-1's computer systems, law enforcement agents found, among other things, an email, dated August 4, 2017, from a pharmacist employed at Pharmacy-1 to defendant SHTINDLER and coconspirator Sevumyants. Attached to the email was a spreadsheet (the "Spreadsheet") entitled "Billed but not Delivered." This Spreadsheet contained approximately 61,459 unique six-digit patient identification numbers, unique six-digit prescription number, and the "Fill Date" for each prescription. The Spreadsheet contained the pharmacist's own analysis of prescriptions that were billed by Pharmacy-1, but which the pharmacist believed were never actually dispensed by Pharmacy-1.

11. Law enforcement conducted a separate analysis of the Spreadsheet, finding that as of on or about July 27, 2018, approximately 74% of the entries on the Spreadsheet were billed and paid for by a public or private insurance company. An analysis of a random subset of those entries showed that a substantial percentage of prescriptions that Pharmacy-1 billed to Medicare, Medicaid, and other health insurance programs, were never actually shipped to patients or their doctors.

12. Law enforcement also reviewed Pharmacy-1's billing software. One of the fields in Pharmacy-1's billing software contained information regarding the Pharmacy-1 employee who "adjudicated" or submitted the claim to the patient's health insurance program. This forensic examination showed that defendant SHTINDLER and coconspirator Sevumyants were responsible for billing private and public health insurers for the vast majority of fraudulently billed prescriptions.

13. Law enforcement confirmed with multiple patients that Pharmacy-1 did not, in fact, dispense and ship many of the prescription medications for which it billed.

14. Based on a review of billing and shipping records as discussed above, Pharmacy-1 fraudulently received in excess of $65 million from health insurance providers based on billing for prescriptions that Pharmacy-1 never actually dispensed to patients.